IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL CASSANOVA DYSON,

        Petitioner,

v.                                 Civil Action No. 5:11CV17
                                 Criminal Action No. 5:09CR21

UNITED STATES OF AMERICA,

        Respondent.

## REPORT AND RECOMMENDATION
## THAT §2255 MOTION BE DENIED

## I. INTRODUCTION

On February 2, 2011, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] Petitioner did not file his Motion on the correct form, however, he re-filed on the correct form on March 4, 2011. The Government filed its Response on June 30, 2011.[2] Petitioner did not file a reply.

## II. FACTS

**A.**     **Conviction and Sentence**

Following a 2009 Ohio Valley Drug Task Force and Drug Enforcement Administration joint investigation of a cocaine base distribution network in Wheeling, West Virginia, Petitioner was named in a superseding indictment and later in a second superseding indictment for conspiring to distribute fifty (50) or more grams of cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and aiding and abetting in the distribution of cocaine base within 1,000 feet

---

[1]Dkt. No. 350.

[2]Dkt. No. 390.

of a protected location in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1(C), 860 and 18 U.S.C. § 2.

Following his indictment, Petitioner was offered a plea agreement by the government. In the first plea agreement, submitted to defense counsel on September 10, 2009, Petitioner would have been required to plead guilty to Count two of the superseding indictment with a stipulated relevant conduct provision of between 50 and 150 grams of cocaine base and a one-level enhancement pursuant to U.S.S.G. § 2D1.2(a)(2). Petitioner and his counsel met with the United States regarding the plea agreement where the benefits of the plea were discussed. Petitioner also asked his counsel for his advice on whether to accept any of the plea agreements, but Petitioner declined to accept the plea agreement.

On November 16, 2009, the United States offered Petitioner a second plea agreement. The second plea agreement would have required Petitioner to plead guilty to the conspiracy charge, with a new stipulation of 150 to 500 grams of cocaine base. After that plea agreement was sent to Petitioner, he filed a motion with this Court asking for a substitution of counsel, stating his attorney "wants [him] to take a plea and hasn't given [him] a good reason why [he] should..." Dkt. No. 246. At the hearing, Petitioner stated "[he] feel[s] [he] is being forced into taking a plea that [he doesn't] know anything really about. Hr'g Tr. 3. His attorney, on the other hand, testified that they had received two plea offers, and that "[j]ust like [he does] in every case, [he] forward[s] those to him and explain to him that It is really a simple decision. He can either take the plea or he is going to have to go to trial." Hr'g Tr. 6. Testimony was also adduced indicating that Petitioner's attorney advised him to strongly consider the plea, but that Petitioner was hesitant because he believed the government lacked evidence. Hr'g Tr. 6-7. The Court

denied the motion concluding that Petitioner's counsel had acted appropriately, and stating that "[t]here is no breakdown in communication. Defendant simply does not like the outcomes he is facing which includes a prison sentence even if he pleads guilty. The Court would note Defendant is facing a much longer prison sentence if he is found guilty." Hr'g Tr. at 2.

Petitioner never signed a plea agreement and his case proceeded to trial. At trial, Petitioner stated he was not guilty of the crimes mentioned in the indictment. He denied knowing T.J. Kunik, who he was accused of aiding and abetting, and he denied meeting Mike Masciarelli, Bill Wiley, Frank Miller and Johnell Adams, each of whom testified to having been involved with Petitioner in activities surrounding the cocaine base. Trial Tr. 434.

At the conclusion of the trial, Petitioner was found guilty on both counts. A Pre-Sentence Investigation Report was completed by the United States Probation Office, and Petitioner's attorney filed fourteen objections to the Report. The objections focused on Petitioner's renewed claims of his innocence. At his sentencing hearing, the Court asked Petitioner if he had gone over the objections with his attorney, and he indicated that he had and that he agreed with the objections. Sent. Hr'g Tr. 3-4. Petitioner was then sentenced on March 15, 2010, by the Honorable Frederick P. Stamp to 262 months imprisonment, five years of supervised release, and a $100 special assessment fee on Count one and 240 months on Count two, to be served concurrently, in addition to six years of supervised release and a $100 special assessment fee. Dkt. No. 321. Petitioner's sentence reflected a two-level enhancement for obstruction of justice for giving false trial testimony. Sent. Hr'g Tr. 19.

**B.    Appeal**

Petitioner filed a direct appeal of his conviction and sentence on March 16, 2010. As

grounds therefore, Petitioner asserted ineffective assistance of counsel, arguing that if the terms of the agreement had been properly explained to him, he would have accepted the plea agreement rather than proceeding to trial. See United States v. Dyson, 401 F. App'x. 791 (4th Cir. 2010) (unpublished). Petitioner's conviction and sentence were affirmed on appeal on November 23, 2010. Id.

## C.     Federal Habeas Corpus

The petitioner contends that his counsel's knowledge of the law fell below reasonable standards of professionalism, causing him to render ineffective assistance by:[3]

(1) Not effectively communicating with Petitioner in a way that would allow him to make an informed decision about the plea, directives at trial, and about important evidentiary documentation that could have affected the outcome of the sentence and commitment.

(2) Not fully reviewing the proposed plea agreements with him.

(3) Failing to challenge or object to a multitude of inconsistencies and contradictions throughout the hearing, including not challenging certain facts, evidence and testimony.

(4) Failing to challenge or object to inconsistent statements made surrounding the United States Attorney's assurance of a probable 168 to 235 month maximum sentence despite the fact that Petitioner was issued and received a 262 month sentence.

(5) Failing to challenge the testimony of witnesses or discredit such testimony based on Petitioner's claims that proof existed that he was not in or near West Virginia during the time described.

---

[3]Some of Petitioner's claims have been edited or consolidated in this Report and Recommendation for clarity and concision.

(6) Failing to challenge the veracity and credibility of Mike Masciarelli, Franklin Miller, Bill Wiley, and Johnell Adams for claiming to have had a relationship with Petitioner.

(7) Failing to establish that Petitioner had no ties to West Virginia throughout 2007.

(8) Failing to object to or challenge certain evidence related to the credibility of the "Hawk Video."

(9) Failing to object to or challenge the veracity of two confidential informants who Petitioner claims never to have met or had a viable relationship with.

(10) Failing to challenge the claim that a certain cell phone belonged to Petitioner while there was no evidence connecting the phone to him.

(11) Failing to challenge the co-conspirators' statements that they met Petitioner in an alley for the first time and immediately proceeded to purchase contraband from him.

(12) Failing to challenge or object to the contradictory testimony of Johnell Adams.

(13) Failing to object to or challenge the veracity of Mike Maciarelli's testimony.

(14) Failing to object to or have stricken certain statements involving false testimony.

(15) Failing to challenge the 3.5 kilos of cocaine mentioned even though the prosecution could produce no more than 30.5 grams.

(16) Failing to exercise his privilege of voir dire, resulting in a jury of all Caucasians and no jurors of African-American descent.

(17) Failing to review the Pre-Sentence Investigative Report with Defendant and failing to make recommendations and objections to the Report.

(18) Failing to challenge evidence, object to failed testimony, discredit witnesses, decipher judicial colloquy, and advise Petitioner about the plea, causing overall prejudice

of the jury and the court.

(19) Failing to properly investigate the case and facts.

(20) Failing to provide any discovery for Petitioner to review.

(21) Failing to consider exculpatory evidence demonstrating Petitioner's innocence.

(22) Failing to invest adequate time and resources to Petitioner.

(23) Ignoring the existence of employment logs and other alibis.

(24) Failing to introduce evidentiary documentation available.

(25) Failing to properly analyze testimony and to object accordingly.

(26) Failing to challenge inconsistencies and contradictions.

(27) Failing to challenge or clarify misinformation from probation.

(28) Introducing incriminating information without authority.

(29) Failing to file any pretrial motions baring admissibility

(30) Failing to file a sentencing memorandum or argue therein.

(31) Failing to address unwarranted enhancements and levels.

(32) Failing to challenge quantities and ratios of evidence found.

(33) Failing to establish and prove lack of ties to the co-conspirators.

(34) Failing to properly advise Petitioner of proposed evidence against him.

(35) Depriving Petitioner of his fundamental rights.

(36) Causing Petitioner to make uninformed and unsound decisions.

(37) Causing Petitioner to serve a federal sentence beyond reason.

(38) Prejudicing the court through ineffective assistance and error.

The Government contends that the allegations in petitioner's Motion Under 28 U.S.C. §

2255 boil down to three main kinds of complaints: those regarding the plea discussions, those regarding trial performance, and those regarding sentencing. The government contends these lack substantive merit because:

(1)     Petitioner denied any drug activity under oath at trial, so he cannot now meet his burden of showing that but for the advice of counsel he would have pled guilty. The government also contends that his counsel did advise him to enter into the plea agreement.

(2)     An analysis of Petitioner's allegations of trial error do not reveal any error by counsel, not can Petitioner demonstrate that he was prejudiced by these alleged errors.

(3)     Petitioner's counsel did file objections to the Presentence Report and also went over the report with him

**D.    Recommendation**

Based upon a review of the record, the undersigned recommends that Petitioner's § 2255 motion be denied and dismissed from the docket because Petitioner's claims are without merit.

## III. ANALYSIS

**A.    Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought

pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, No. 2:02CR65, 2006 WL 36859, at *2 (E.D.Va. Jan. 4, 2006).

**B.      Procedural Default**

The Court finds petitioner is not procedurally barred from raising claims of ineffective assistance of counsel in his present § 2255 motion.  It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack.  Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).  Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error.  United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).  Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal.  See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, No. 5:03CV02084, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

**C.      Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness.  Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90. Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

Following is a discussion of each of Petitioner's ineffective assistance of counsel claims.

**Issue 1: Whether Counsel Rendered Ineffective Assistance in Failing to Better Explain or More Strongly Recommend that Petitioner Plead Guilty via the Proposed Plea Agreements (Claims 1, 2, 18, and 34)**

Petitioner contends his counsel did not fully explain the plea agreements to him, and that if he had, he would have taken the plea deal.

In the Fourth Circuit, a defendant's counsel has clearly delineated duties surrounding plea negotiations. Counsel must "1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilty and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision." Jones v. United States, No. DKC 2004-3136, 2008 U.S. Dist. LEXIS 24908, at *7 (D. Md. Mar. 28, 2008) (relying on Jones v. Murray, 947 F.2d 1106, 1110-11 (4th Cir. 1991)). Once it is clear what the respective sentence exposure is if the defendant stands trial versus if he accepts a plea offer, the defendant must use this information to make a decision whether to go to trial or plead guilty. Hammond v. United States, 528 F.2d 15 (4th Cir. 1975). Therefore, "an incompetently

counseled decision to go to trial, a failure to inform a defendant of a plea offer, or a failure to pursue plea negotiations suggested by the circumstances of the case, all can result in a denial of an individual's Sixth Amendment right to effective assistance of counsel." Jackson v. United States, No. 7:07cv00191, 2007 WL 4553607, at *6 (W.D. Va. Dec. 20, 2007). See also United States v. Blalock, 20 F.3d 1458 (9th Cir. 1994) (finding a failure to inform the defendant of a plea offer was unreasonable assistance).

In this case, however, the Court finds Petitioner's claim is without merit. First, the record reflects that Petitioner's counsel made every effort to explain the proffered plea bargain with him and to encourage him to sign it. For example, Petitioner's counsel asked the government to extend the deadline for the first plea agreement until October 8, 2009 so that he and Petitioner could discuss it together while he was in Wheeling for a pretrial conference. Also, during the Rule 11 conference, Petitioner and counsel discussed the advantages of a plea bargain. Then, after the government offered a second plea deal, Petitioner filed a motion for the appointment of new counsel, stating as his reason that: "he wants me to take a plea and hasn't given me a good reason why." At the hearing on the Motion, Petitioner's attorney explained that Petitioner was aware of the terms of the plea agreement, but that he was hesitant to plead because he did not think the United States had the evidence it needed to prove its case. H'g Tr. 12-13. The Court agreed, finding that "Defendant simply does not like the outcomes he is facing which includes a prison sentence even if he pleads guilty." Dkt. No. 157. Therefore, given this factual record, Petitioner cannot prove that his counsel's performance was not objectively reasonable.

Second, even if Petitioner could prove show that his counsel did not encourage him to enter into the plea agreement or adequately explain it to him, Petitioner cannot show that he

would have entered into the agreement but for the advice of his attorney. Petitioner consistently protested his innocence and continues to maintain that he does not know or have a relationship with his alleged co-conspirators.  At trial, he testified:

> **Q:** Have you ever sold, dealt, or distributed crack cocaine in your life?
> **A:** No.
> **Q:** You are innocent?
> **A:** Yes, sir.
> **Q:** Will you look at the jury and tell them that you are innocent?
> **A:** Yes, I am innocent.
> **Q:** You have never sold, distributed cocaine, crack cocaine in your life?
> **A:** No.
> **Q:** When TJ Kunik came in here and said that he conspired with you to distribute crack cocaine, you sold it to him, was he truthful?
> **A:** No, he wasn't.
> **Q:** He was lying?
> **A:** Yes, he was.
> **Q:** When Mike Masciarelli came in here and told the jury that he conspired with you, he bought crack cocaine from you, was he truthful?
> **A:** No, he wasn't.
> **Q:** Johnell Adams, was he truthful?
> **A:** No.
> **Q:** When he told?
> **A:** He wasn't.
> **Q:** I guess you need to let me finish my question.
> **A:** Okay, sorry.
> **Q:** Was– who were we on here? Johnell Adams, when he came in here and told the jury that you helped him cut up his crack, was he truthful?
> **A:** No, he wasn't.
> **Q:** William Wiley, when he came in here and told the jury that he bought crack from you, was he truthful?
> **A:** No, he wasn't.

Trial Tr. 407-08.

As such, his conclusory assertions of constitutionally defective plea-related advice are not persuasive in light of the inability he would have had of acknowledging, under oath, as part of the Rule 11 colloquy, that he is in fact guilty. It is Petitioner's burden in this matter to show a reasonable probability that he would have pleaded guilty and accepted the plea agreement "but

for" the allegedly incomplete plea advice allegedly given to him by his counsel. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, Petitioner has not met his burden.

**Issue 2: Whether Petitioner was Prejudiced by Failing to Make Recommendations and Objections to the Pre-Sentence Report and by Failing to Review it with him (Claims 17, 27, 30, and 31)**

Petitioner contends that he was prejudiced by his counsel's failure to make recommendations and objections to the Presentence Report and by failing to go over the Presentence Report with him.

First, with respect to Petitioner's allegations that counsel was ineffective because he failed to make objections to the Presentence Report, the Court finds these contentions to be without merit. The Strickland test requires Petitioner, when asserting these kinds of claims, to show that his attorney's performance fell below and objective standard of reasonableness. Strickland, 466 U.S. at 688. In this case, however, the record reveals his counsel did object, via written objections, to the Presentence Report. His objections contained a total of fourteen objections, and objections one through six all contained objections to the relevant conduct findings in the Report. Sent. Hr'g Tr. 3. Second, even if petitioner could prove his counsel was ineffective for failing to raise certain objections to the Presentence Report, Petitioner has failed to show how he was prejudiced by the facts in the Presentence Report as admitted. While Petitioner challenges numerous aspects of the Presentence Report, Petitioner has failed to show that the sentencing judge relied on the facts in arriving at the sentence or that his sentence would have been different absent the facts in the Report. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

Second, with respect to Petitioner's claims of ineffective assistance of counsel because

his attorney did not fully go over the Presentence Report with him, this Court finds this argument

to be without merit as well. At his sentencing hearing, Petitioner's counsel testified that he went

over the Report with Petitioner:

> I sent– I made a copy of it, sent it to Mr. Dyson with instructions for him to look
> it over and get back to me with him input for objections or his contentions that he
> would like to be submitted in the form of objections. Before that, I met with Mr.
> Dyson and Mr. Fugate at Northern Regional Jail before we received this. Mr.
> Dyson and I talked on the phone and we met again at Northern Regional Jail.

Sent. Hr'g Tr. 3.

Also at the sentencing hearing the Judge asked: "Mr. Dyson, have you received, and reviewed

the presentence report? Have you gone over that with your counsel, Mr. Pennington, and has he

answered to your satisfaction any questions you had about the report?" To which Petitioner

answered "yes." Sent. Hr'g Tr. 3-4. Therefore, this Court finds Petitioner's argument

unpersuasive.

## Issue 3: Whether Petitioner was Prejudiced by his Counsel's Failure to use the Voir Dire Process to Seat a Jury of his Peers (Claim 16)

Petitioner next contends that his counsel failed to effectively use the voir dire process to

seat a jury of his peers. More specifically, Petitioner argues that he was prejudiced by having his

case decided by an all Caucasian jury.

As held by the United States Supreme Court in Duren v. Missouri, 439 U.S. 357, 364

(1979), in order to establish a prima facie violation of the fair-cross-section requirement, a

defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from which juries are selected is
> not fair and reasonable in relation to the number of such persons in the community;
> and (3) that this underrepresentation is due to systematic exclusion of the group in
> the jury-selection process.

Here, Petitioner offers no evidence that the District Court's process systematically excluded any distinctive group in the community. Petitioner has not addressed nor provided evidence for any of the above factors. Therefore, this ground has no merit and should be denied.

**Issue 4: Whether Petitioner was Prejudiced by his Counsel's Failure to Fully Investigate the Facts and Case (Claims 5, 7, 19, 21 and 23)**

Petitioner next contends that his counsel failed to fully investigate the facts underling the case against him, both generally and with respect to a potential alibi defense. The government contends that his counsel was not constitutionally compelled to undertake further investigation.

With regard to Petitioner's potential alibi defense, this Court notes that a criminal defense lawyer has a duty to conduct a pretrial investigation that is "reasonable [ ] under prevailing professional norms." Strickland, 466 U.S. at 688; see also Wiggins v. Smith, 539 U.S. 510, 523 (2003). In addition, the strategic decision of Petitioner's counsel regarding the extent of his investigation into the alibi defense "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; see also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003). Where further investigation would not be helpful, counsel is permitted to make the decision to terminate further investigation. Brown v. Sternes, 304 F.3d 677, 692 (7th Cir. 2002) (noting that it can be a reasonable exercise of judgment to terminate further investigation of a fruitless issue).

Applying these principles of law to the current issue, counsel's performance was constitutionally reasonable and thorough. The record shows that at trial, defense counsel did investigate this defense and even attempted to establish that Petitioner was not in Wheeling, West Virginia at the time of the alleged conspiracy. He questioned Petitioner on where he was

during the time period and admitted defendants exhibits one through six to help establish that alibi. Trial Tr. 411-23. However, the record indicates that this defense was likely ineffective because of inconsistencies in the Petitioner's own testimony. For example, Petitioner admitted that he was in Wheeling on some of the occasions in question, and he also admitted he was the person captured on a surveillance tape on Market Street. Trial Tr. 425-26. Accordingly, counsel reasonably investigated and presented Petitioner's alibi defense.

With respect to Petitioner's other claims that his counsel did not fully investigate his case, Petitioner has failed to identify what physical or testimonial evidence he believes gave rise to his counsel's duty to further investigate. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding that a petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings). Here, Petitioner only makes a one-line, naked assertion that his counsel's investigation was insufficient, but without any supporting facts, such an assertion is not enough to carry the claim.

**Issue 5: Whether Counsel Was Ineffective In Failing to Use Prior Inconsistent Statements to Impeach Government Witnesses, to Attack their Credibility, or to Challenge False Testimony (Claims 3, 6, 9, 11, 12, 13, 26, and 33)**

Petitioner claims his counsel was ineffective in failing to impeach government witnesses, including Mike Maciarelli, Franklin Miller, Bill Wiley, Johnell Adams, and two confidential informants, on the basis of either prior inconsistent statements or for lack of credibility. The government contends that the record shows his counsel fully cross-examined each of the witnesses.

The Court agrees with the Government and finds petitioner's argument is without merit. First, as the Government accurately asserts, counsel was not ineffective in failing to impeach

government witnesses. The record shows that counsel did impeach the government's witnesses, bringing to the jury's attention their use or addition to controlled substances, their prior felony records, the benefits they received for working as confidential informants, and their anticipated rewards for testifying. Trial Tr. 124, 142-45, 191-93, 197. At sentencing, the Court noted that defense counsel had tried to discredit government witnesses, stating:

> "I certainly understand the objection, which is, basically, these witnesses are all unreliable, that they are exactly this, according to the defendant, as Mr. Pennington denominated them, I think in- even in his opening statement, as addicts and jail birds, that was the term that was used, and in some cases they are. In most of the cases they are testifying under plea agreements. All of that was brought out in the testimony and argued to the jury."

With this information, the jury was able to assess their veracity and credibility. In this case, the jury members merely chose to credit their testimony over the testimony of the defendant, and that it is not a failure that can be attributed to counsel.

In addition, although Petitioner claims that many give false testimony in order to ensure his conviction, and that his attorney should have questioned witnesses more thoroughly on their false testimony, a motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton, 2006 WL 36859, at *2. Here, petitioner provides no affidavits, declarations, or other evidence to support his claim that his attorney did not challenge their testimony. Therefore, Petitioner has failed to show by a preponderance of the evidence that he is entitled to relief and this claim should be dismissed.

**Issue 6: Whether Counsel Rendered Ineffective Assistance for Failing to Maintain Adequate communication (Claims 1 and 36)**

Petitioner next claims that he received ineffective assistance because his attorney did not effectively communicate with Petitioner in a way that would allow him to make an informed decision about the plea, about directives at trial, and about important evidentiary documentation that could have affected the outcome of the sentence and commitment.

Whether his attorney effectively communicated with him about the potential plea agreements was already discussed above, so the remaining issues are only whether counsel effectively communicated with Petitioner at trial and with respect to evidence. In dealing with these kinds of claims, "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." <u>Harris v. United States</u>, No. 2:08cv79, 2009 WL 6057204, at *10 (N.D.W.Va. Nov. 5, 2009)(citing <u>Strickland</u>, 466 U.S. at 689-90). There are no absolute rules for determining what is reasonable performance. <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is assessed according to the facts of the particular case and at the time of counsel's conduct).

In this case, Petitioner provides no instances of how, where or when these failures in communication occurred, nor does he explain how these alleged failures of counsel harmed him. To the contrary, the record reveals the careful attention of counsel, before, during and after trial, to timely file motions, to request more time when necessary, and vigorously argue on Petitioner's behalf. As such, this Court must dismiss this claim for lacking merit.

## Issue 7: Whether Counsel Rendered Ineffective Assistance for Failing to Object to False Testimony (Claim 14)

Petitioner next asserts that failing to object to or have stricken certain statements involving false testimony amounted to ineffective assistance of counsel.

This ground is without merit as Petitioner has failed to identify what evidence was false

and he has failed to establish how it was used to violate his due process rights. To the extent that Petitioner is referring to the testimony of government witnesses who made statements implicating him in the conspiracy, this Court has already addressed that argument above.

Furthermore, even though a conviction can also violate due process when it is obtained through the use of evidence that the prosecution knows to be false, in order to succeed on such a claim, the Petitioner must first met the heavy burden of showing that the challenged witnesses testified falsely. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). "A defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was indeed perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." Id. (citation omitted). In this case, even though it is not clear if Petitioner is making a claim that the prosecution knowingly used false evidence, he would have to demonstrate that the challenged was indeed false– as opposed to simply antithetical to his own version of events. In addition, he would have to point to facts showing that the government knew of these alleged falsities. See Stockton v. Virginia, 852 F.2d 740, 749 (4th Cir. 1988) ("A *habeas corpus* petitioner must show that the prosecutor or other government officers knew the testimony in question was false in order to prevail."). Here, without any of this evidence, Petitioner's claim is essentially an argument that the jury believed the wrong version of the facts presented at trial, but a court reviewing a habeas petition is in no position to second guess the fact-finding of a jury, therefore the Court cannot conclude that this warrants habeas relief.

**Issue 8: Whether Counsel Rendered Ineffective Assistance in Failing to Object When Petitioner was Given a Greater Sentence than the Government's Predicted Sentence (Claim 4)**

Petitioner next contends that he received ineffective of counsel because his attorney

failed to object to or challenge the government's inconsistent statements regarding a sentence prediction of 168-235 months, when in fact he received a 262 month sentence. The government contends that this was only a prediction based on what was likely if Petitioner did not take the stand and if the relevant conduct was less than 500 grams, both of which ended up not being the case at trial.

In this case, Petitioner's argument must fail because he cannot show that any prejudice resulted from the government's sentence prediction as required under the <u>Strickland</u> standard. Here, the Court clarified any misconceptions. For example, when asked at the hearing on Petitioner's Motion to Substitute Counsel, the government noted that the guideline range it gave was assuming that the relevant conduct was less than 500 grams, but the government made clear that the evidence at trial could exceed 500 grams, stating, for example, that it was sure the relevant conduct "would exceed 150, if not 500 grams of crack cocaine." Hr'g Tr. 10. Additionally, the government also stated that this range was likely only "assuming [Petitioner didn't] take the stand." Hr'g Tr. 10-11. Accordingly, Petitioner was aware that the range stated by the government was only a prediction, and that he could receive more time if the government could prove greater relevant conduct, or if he took the stand and lied. Therefore the Petitioner's claim of ineffective assistance of counsel based on his attorney's failure to challenge the government's sentence prediction is unfounded.

**<u>Issue 9: Whether Counsel Rendered Ineffective Assistance in Failing to Challenge the Amount of Drugs Attributed to him</u> (Claims 15 and 32)**

Petitioner next contends that he received ineffective assistance of counsel because his attorney failed to challenge the 3.5 kilos of cocaine mentioned even though the prosecution

could produce no more than 30.5 grams.

This Court finds Petitioner's argument unpersuasive. First, the Court is not clear how Petitioner arrived at the total amount of drugs he claims the prosecution was able to produce. Government exhibits 12-17 and 19-21 account for a combined total of 35.29 grams, which were taken from controlled buys or through search and seizure, not 30.5 grams as he claims. Trial Tr. 243-248. In addition to this amount of drugs, there was testimony from various witnesses throughout the trial describing other purchases and amounts of drugs they got from Petitioner. For example, Mike Maciarelli testified that he got a quarter of a kilogram, which is 250 grams, from Petitioner. Trial Tr. 310. Franklin Miller also testified that he got 26 grams from Petitioner. Those who testified described more than one hundred personal transactions with Petitioner over the course of their relationships with him. Given this testimony, the amount of drugs attributed to him was otherwise supported by reasonable evidence. With such overwhelming evidence, even assuming arguendo that Petitioner's attorney did not challenge the amount of drugs, it was reasonable for counsel not to do so based on the vast amount of evidence to the contrary. See United States v. Perry, 35 F. App'x 62, 63 (4th Cir. 2002).

**Issue 10: Whether Counsel Rendered Ineffective Assistance in Failing to Challenge or Introduce Certain Evidence (Claims 8, 10, and 24)**

Petitioner next claims that he received ineffective assistance of counsel because his attorney failed to challenge evidence relating to the "Hawk video," evidence relating to the cell phone, and because he failed to introduce certain evidence. However, this Court finds that counsel did make an effort to challenge this evidence. Defense counsel, for example, objected when the government tried to introduce the video. Trial Tr. 137-41. Defense counsel also objected again when the government moved for its admission. As to the cell phone, this Court

finds that defense counsel did make an effort to question the evidence connecting Petitioner to the cell phone. For example, when the government tried to introduce the list of numbers called by Mike Masciarelli, defense counsel objected to try to keep that evidence out. Trial Tr. 95-96. But, in this case, the government made a point of questioning each of its witnessees about calls made to Petitioner's cell phone, and on cross, Petitioner admitted that during the period in question, he had three separate cell phones, all pre-paid. Trial Tr. 29. Given the record, it is clear the jury simply chose to credit the evidence put on by the government.

In addition, these claims, including Petitioner's assertion that counsel failed to introduce evidence, relate to trial proceedings and the introduction of evidence or non-introduction of evidence, which Petitioner is merely trying to couch in terms of an ineffective assistance of counsel claim. As such, they should have appropriately been raised on direct appeal and not in this habeas claim. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). These underlying evidentiary issues are barred because they should have been raised before.

**All Other Issues (Claims 20, 22, 24, 25, 28, 29, 35, 37 and 38)**

All of the remaining ineffective assistance of counsel claims, in the thirty-eight separate claims raised by Petitioner and reformulated in this Order, must also fail for a variety of reasons. First, all other claims asserted by Petitioner are bare-boned.[4]  Because Petitioner has not provided the Court with any evidence to support these claims, he has failed to meet his burden under § 2255.  See Sutton, 2006 WL 36859, at *2; Nickerson v. Lee, 971 F.2d 1125, 1136 (4th

---

[4]See Pet's Mot. To Vacate 15, also listed as claims 19-38 on pages 5-6 of this Report and Recommendation. These are all one-sentence, unsupported assertions of ineffective assistance of counsel.

Cir. 1992)("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").  Accordingly, all other grounds should be denied. Finally, the remaining claims made by Petitioner are merely duplicative.  Simply rewording his claims in another way does not make them separate and distinct claims for this Court's consideration. Accordingly, these remaining claims must also fail.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's §2255 motion be **DENIED** and dismissed from the docket.

 Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: October 13, 2011

_James E. Seibert_
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE